913 F.2d 1288
 UNITED STATES of America, Appellee/Cross Appellant,
v.
Ricky RUSSELL, Appellant/Cross Appellee.
UNITED STATES of America, Appellee/Cross Appellant,
v.
Charles MOORE, Appellant/Cross Appellee.
UNITED STATES of America, Appellee,
v.
Willie WALKER, Appellant.
UNITED STATES of America, Appellee/Cross Appellant,
v.
Gilbert STUMPE, Appellant/Cross Appellee.
UNITED STATES of America, Appellant,
v.
Anthony TAYLOR, Appellee.
 Nos. 89-2652 to 89-2655 and 89-2894.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1990.
Decided Sept. 10, 1990.
Rehearing Denied Nov. 1, 1990.
 
 1
 Bradley G. Kafka, Clayton, Mo., for appellant Stumpe.
 
 
 2
 Valerie M. Benkert, St. Louis, Mo., for appellant Walker.
 
 
 3
 Timothy P. Leahy, St. Louis, Mo., for appellant Russell.
 
 
 4
 Michael Dwyer, St. Louis, Mo., for appellant Moore.
 
 
 5
 David Rosen, St. Louis, Mo., for appellee U.S.
 
 
 6
 Norman G. Smith, St. Louis, Mo., for appellee Taylor.
 
 
 7
 Before McMILLIAN, FAGG, Circuit Judges, and STROM,* District Judge.
 
 
 8
 STROM, District Judge.
 
 
 9
 Ricky Russell, Charles Moore, Willie Walker, Gilbert Stumpe and Anthony J. Taylor (hereinafter sometimes referred to as defendants) pled guilty to possession of stolen property valued in excess of $100 in violation of 18 U.S.C. Sec. 659. They were sentenced under the Federal Sentencing Guidelines (Guidelines). Russell, Moore, Walker, and Stumpe appeal their sentences. Russell also contends that the district court[1] erred in denying his motion to withdraw his guilty plea. The United States (hereinafter, the government) cross-appeals with respect to Russell, Moore, Stumpe and Taylor. We affirm.
 
 BACKGROUND
 
 10
 These related cases involve possession of stolen goods. In April, 1988, a joint investigation of the sale of stolen goods in East St. Louis was initiated by the Federal Bureau of Investigation, United States Customs Service, several other federal agencies, and state and local authorities. A confidential informant and an FBI undercover agent first met with Ricky Russell in April, 1988, regarding potential future sale of stolen items. In May, 1988, Ricky Russell's brother, Tony Russell, contacted the informant and offered to sell thirty-two (32) cases of stolen Hennessy cognac for $3,200. The retail value of the cognac was $6,326.40. Tony Russell was later arrested while loading the stolen goods in East St. Louis.
 
 
 11
 On May 5, 1988, the confidential informant, an FBI agent, and Moore and Ricky Russell met, and Ricky Russell, Moore and the informant sold the agent one case of the cognac for $100. Russell told the agent that he could also obtain credit cards and jewelry. On May 17, 1988, the informant and Tony Russell arranged for the sale of six (6) stolen AT & T computers for $300. The computers had been stolen from a rural freight yard in Venice, Illinois, and had a retail value of $3,600.
 
 
 12
 In June, 1988, Tony Russell and Charles Moore again spoke with the informant regarding the sale of stolen vodka and pants. They negotiated the sale of thirty-five (35) or thirty-six (36) cases of McCormack vodka at $30 per case and sixty (60) pairs of Montgomery Wards men's action pants at $10 per pair. Later that day, the informant met with Tony Russell, Moore, Stumpe, Taylor and Walker. The informant paid $800 for thirty-five (35) cases of vodka and fifty-five (55) pairs of pants. All of these items had been stolen from the Venice, Illinois, rail yards. The vodka had a value of $1,530 and the pants, $1,292.50. The stolen property was then transported from Illinois to Missouri by Tony Russell, Moore, Stumpe, Taylor, and Walker in two vehicles.
 
 
 13
 On June 10, 1988, the informant again spoke with Tony and Ricky Russell about the sale of forty (40) cases of stolen Remy Martin cognac. During these conversations, Ricky Russell told the informant that he was becoming directly involved in the negotiations because he felt he had been short-changed by Tony Russell on previous transactions. A price of $3,400 for the transaction was agreed upon. Later, Ricky Russell and Moore attempted to deliver the cognac but were arrested.
 
 
 14
 Defendants were indicted, along with others, in a five-count indictment in connection with the possession and transportation of forty (40) cases of Remy Martin cognac. Pursuant to stipulation, defendants pled guilty to one count and the other charges were dismissed.
 
 
 15
 Walker agreed to cooperate with the government prior to his plea and Stumpe agreed to cooperate after he and the other defendants had pled guilty. The record shows no other affirmative acts with respect to acceptance of responsibility by defendants.
 
 
 16
 Prior to sentencing, but subsequent to release of the United States Probation Office presentence report, Ricky Russell moved to withdraw his guilty plea. The motion was denied.
 
 
 17
 On September 27, 1989, defendants were sentenced. Russell was found to be the manager or supervisor of the group and was sentenced to thirty-six (36) months imprisonment. Gilbert L. Stumpe was sentenced to a prison term of fourteen (14) months. Anthony Taylor was sentenced to a term of twenty (20) months. Charles Moore was sentenced to forty-eight (48) months imprisonment. Willie Walker was sentenced to twenty (20) months imprisonment. The sentence for each includes a period of supervised release following incarceration.
 
 
 18
 In applying the Guidelines, the district court increased Stumpe's and Walker's offense level from seven (7) to fourteen (14) pursuant to U.S.S.G. Sec. 2B1.2(b)(4) as involving organized criminal activity. The district court also allowed a two-level reduction in each defendant's initial Total Offense Level for acceptance of responsibility under U.S.S.G. Sec. 3E1.1. The district court enhanced Ricky Russell's sentenced by three (3) levels as the manager or supervisor of five or more persons pursuant to U.S.S.G. Sec. 3B1.1(b).
 
 DISCUSSION
 I.
 
 19
 For reversal, Stumpe and Walker argue that the district court erred in construing Sec. 2B1.2(b)(4) of the Guidelines to enhance their offense level from seven (7) to fourteen (14). Stumpe and Walker argue that a subsequent clarifying amendment to that section should have been considered with regard to the applicability of the section. Construction of the Guidelines is a question of law which is subject to plenary review. United States v. Ofchinick, 877 F.2d 251 (3rd Cir.1989).
 
 
 20
 It is clear that 18 U.S.C. Sec. 3553(a)(4) and 3553(b) mandate application of the guideline in effect on the date of sentencing. At the time of their sentencing on September 27, 1989, Sec. 2B1.2(b)(4) provided that "[i]f the offense level involved organized criminal activity, and the offense level as determined above is less than level 14, increase to level 14." U.S.S.G. Sec. 2B1.2(b)(4). "Organized criminal activity" was defined in the application notes to the previous section of the Guidelines as referring to "operations such as car theft rings or chop shops, where the scope of the activity is clearly significant but difficult to estimate." U.S.S.G. Sec. 2B1.1, comment. (n. 8). The Guidelines were amended effective November 1, 1989, to provide as follows: "[i]f the offense involved a organized scheme to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to 14." U.S.S.G. Sec. 2B1.2(b)(5).
 
 
 21
 While the sentencing commission characterizes the amendment as a "clarification," see Amendments to Sentencing Guidelines for United States Courts, 54 Fed.Reg. 94, 21355 (1989), it is clear from the language and effect of the amendment that the revision constitutes a fundamental change in the application of the section. Originally, the section was applicable to enterprises "such as motor vehicle theft rings or chop shops." U.S.S.G. Sec. 2B1.1, comment. (n. 8) (emphasis added). Subsequent to the amendment, it is limited to those ventures only. There is nothing in the guideline in effect at the time of the sentencing to lead to a conclusion that offenses such as those at issue here were not included in the section. We find that the district court's construction of the former Sec. 2B1.2(b)(4) is correct.
 
 II.
 
 22
 Moore asserts that the district court erred in applying the retail value of the goods stolen as the measure of loss under Guidelines Sec. 2B1.1(b)(1)(G). That section allows for increases in the offense level for the value of the property according to corresponding tables in Sec. 2B1.1. The application notes to that section state:
 
 
 23
 "Loss" means the value of the property taken, damaged or destroyed. Ordinarily, when property is taken or destroyed, the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.[2]
 
 
 24
 U.S.S.G. Sec. 2B1.1, comment. (n. 2). The application notes further provide that "the loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation." Id.
 
 
 25
 With respect to market value, the Sentencing Guidelines do not specify whether wholesale market value or retail market value is appropriate. The offense to which Moore has been convicted is 18 U.S.C. Sec. 659. The value of property is significant in Sec. 659 to determine whether the offense is a misdemeanor or a felony. For purposes of valuation of property under Sec. 659, the definition of value is found in 18 U.S.C. Sec. 641. United States v. Watson, 570 F.2d 282, 283 (8th Cir.1978). That statute provides that "[t]he word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C. Sec. 641 (emphasis added).[3] Accordingly, the district properly used the retail value in sentencing Moore.
 
 
 26
 Moore stipulated in his plea agreement that the value of the stolen goods was over $24,000. Moore contends however that the value used for purposes of his conviction should not be used for purposes of sentencing. This reasoning is misplaced. The purpose of the Sentencing Guidelines is to provide uniformity in sentencing. U.S.S.G. Ch. 1, Pt. A, intro. Use of wholesale as opposed to retail valuation would only encourage disparate sentencing for essentially similar criminal acts, especially in cases involving stolen property with several tiers of distribution.[4]
 
 III.
 
 27
 Russell first argues that the district court abused its discretion in failing to allow him to withdraw his plea of guilty. He argues that the Court abused its discretion in failing to consider whether he was reasonably justified in his mistaken impression that the facts stated in the stipulation would be consistent with those in his presentence report. He states that he would not have agreed to a stipulation as part of an agreement to plead guilty which had been consistent with the Probation Office's characterization of his involvement.
 
 
 28
 The Guidelines state: "The Court is not bound by the stipulation, but may, with the aid of the presentence report, determine the facts relevant to sentencing." U.S.S.G. Sec. 6B1.4(d). In the face of this clear and unequivocal language, we reject Russell's contention that any mistaken impression was justified. Moreover, the record shows that the district court considered and rejected Russell's contention.
 
 
 29
 Russell further argues that the district court erred with respect to his sentence in accumulating the value of all goods and transactions for which the co-defendants were indicted, in finding he was the leader of five or more persons and in the business of selling stolen property and in calculating certain prior convictions. We review the district court's application of the Guidelines according to 18 U.S.C. Sec. 3742(e), accepting the district court's findings of fact unless clearly erroneous and giving due deference to the district court's application of the Guidelines to the facts. United States v. Johnson, 906 F.2d 1285, 1290-91 (8th Cir.1990).
 
 
 30
 In this regard, Russell first argues that he cannot be held accountable for the total value of items stolen. In the stipulation of facts signed by Ricky Russell as part of his guilty plea, he acknowledged involvement in the sale of the stolen Hennessy cognac worth $6,326.40; of six (6) AT & T computers worth $3,600; of McCormack vodka and Montgomery Ward slacks worth $2,822.50; and of Remy Martin cognac worth $11,880 for a total value of $24,628.90. This total value was accumulated pursuant to Sec. 1B1.3(a)(2) of the Guidelines and six (6) levels were added to Russell's offense level.
 
 
 31
 The district court enjoys wide discretion in making sentencing determinations. United States v. Cohoon, 886 F.2d 1036, 1037 (1989). Information relating to criminal activity for which the defendant was not prosecuted and uncorroborated hearsay evidence can be properly considered by the sentencing court provided the defendant has had an opportunity to explain or rebut the evidence. Id. Section 1B1.3(a)(2) clearly authorizes the district court to consider amounts beyond those to which a defendant has pled guilty. United States v. Allen, 886 F.2d 143, 145-46 (8th Cir.1989). The background to Sec. 1B1.3(a)(2) states that "relying on the entire range of conduct regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses [referring to a pattern of small thefts]." U.S.S.G. Sec. 1B1.3(a), comment. (backg'd). There is evidence in the record to support the district court's use of the aggregate amount and, further, Russell stipulated to some involvement in the theft of that amount.
 
 
 32
 In support of his contention, Russell relies on the commentary to Sec. 1B1.3 which states: "In a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would not be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)" (Emphasis in original). U.S.S.G. Sec. 1B1.3, comment. (backg'd).
 
 
 33
 Russell's reliance is misplaced. Section 1B1.3(a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses for which the guidelines depend substantially on quantity. U.S.S.G. Sec. 1B1.3, comment. (backg'd). The distinction is made on the basis of Sec. 3D1.2(b)(2) which provides for grouping together of all counts charging offenses of a type covered by that subsection. Id. An offense under Sec. 2B1.2 requires grouping. U.S.S.G. Sec. 3D1.2(d). On the other hand, robbery, an offense under Sec. 2B3.1, does not. Id. Accordingly, it was proper for the district court to consider all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.
 
 
 34
 Russell next asserts error in the district court's finding that he was a manager or supervisor of the criminal activity and accordingly increasing his base offense level under Guidelines Sec. 3B1.1. Again, this is factual determination reviewed under a clearly erroneous standard. United States v. Streeter, 907 F.2d 781, 787 (8th Cir.1990). There is evidence in the record to support the district court's findings. The record shows that Russell initiated transactions, negotiated prices, recruited individuals, and was characterized as a spokesperson for the group. This court acknowledges a broad definition of "leadership and organizational role." United States v. Collar, 904 F.2d 441, 442 (8th Cir.1990). A finding that a defendant is functioning as an organizer or leader does not necessarily mean that he is directly controlling other individuals. Johnson, at 1291-92. With those standards in mind, we find that the district court correctly adjusted Russell's offense level for his role as a manager or supervisor.
 
 
 35
 Russell similarly asserts error in the district court's finding that he was in the business of selling stolen property and adding four to his offense level under Guidelines Sec. 2B1.2(b)(3)(A). Again, the district court's factual findings in this regard will not be upset unless clearly erroneous. There is evidence in the record to support the district court's findings. Russell had pled guilty to an unrelated charge of possession of stolen credit cards.[5] There was also testimony before the court relating to Russell's statement to an informant that he could supply stolen checks, jewelry, and credit cards. This evidence could reasonably lead the district court to conclude that Russell was in the business of selling stolen property as that term is commonly understood.
 
 
 36
 Russell's argument that the district court should not have considered his prior convictions is also without merit. He argues that an eleven day term of imprisonment for convictions for Assault and Criminal Damage to Property is in the nature of a sentence for disorderly conduct or disturbing the peace and, pursuant to Guidelines Sec. 4A1.2(c)(1), should not have been counted to compute his criminal history.
 
 
 37
 Russell has submitted no authority for the proposition that assault and criminal damage to property is akin to disorderly conduct or disturbing the peace. Indeed, there is nothing in the record to show the facts underlying the convictions. Russell submits that it was an abuse of discretion for the district not to have inquired as to the underlying facts. We reject this contention and find no error in the district court's actions.IV.
 
 
 38
 The government asserts that the district court erred with respect to Russell, Moore, Stumpe and Taylor in allowing them a two-level reduction for acceptance of responsibility pursuant to Sec. 3E1.1 of the Guidelines. The government argues that mere guilty pleas, without additional affirmative acts, are an insufficient basis upon which to allow a two-point reduction for acceptance of responsibility.
 
 
 39
 A district court retains discretion to grant the two-level reduction for acceptance of responsibility if it believes that the defendant "demonstrated a recognition and affirmative responsibility" and "sincere remorse" for the offense he or she committed. United States v. Knight, 905 F.2d 189 (8th Cir.1990). The fact that the defendant only pleads guilty is not conclusive in determining either that the defendant did accept responsibility or that the defendant did not accept responsibility. Id. Nothing in the Guidelines requires the district court to find that a defendant exhibits any of the specific listed objective acts if it finds that he has accepted responsibility. Id. at 192. Therefore, if a defendant pleads guilty for the offense that he or she committed, the district court may find that the defendant's guilty plea justifies the two-level reduction pursuant to Sec. 3E1.1. Id. (emphasis in original).
 
 
 40
 We grant the sentencing court great deference when reviewing its evaluation of a defendant's acceptance of responsibility, and will disturb the district court's decision only if it is without foundation. Guidelines Sec. 3E1.1, comment. (n. 5); Johnson, at 1291. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. U.S.S.G. Sec. 3E1.1, comment. (n. 5); United States v. Big Crow, 898 F.2d 1326 (8th Cir.1990). Evidence in the record supports the district court's finding that defendants were entitled to a two-point reduction for acceptance of responsibility.
 
 CONCLUSION
 
 41
 Finding no merit in either defendant's asserted errors or the government's cross appeal, we affirm the district court's judgments and sentences in all respects.
 
 
 42
 McMILLIAN, Circuit Judge, concurrent in part and dissenting in part.
 
 
 43
 I concur in the majority opinion's analysis in Parts III (withdrawal of guilty plea) and IV (reduction for acceptance of responsibility), but I disagree with the analysis in Parts I (increase for organized criminal activity) and II (valuation of loss). For the reasons discussed below, I would reverse the sentences of Gilbert L. Stumpe, Willie L. Walker and Charles Moore and remand those cases to the district court for resentencing.
 
 ORGANIZED CRIMINAL ACTIVITY
 
 44
 With respect to Part I, I think the district court should have applied Guideline Sec. 2B1.2(b)(5) (formerly Sec. 2B1.2(b)(4)), as amended, to Stumpe and Walker. Because the United States Sentencing Commission expressly noted that this particular amendment was intended to clarify the scope of coverage of the existing guideline, see Amendments to the Sentencing Guidelines for United States Courts, 54 Fed.Reg. 21348, 21355 (1989), I would give it substantial weight in determining the meaning of the existing guideline. See United States v. Ofchinick, 877 F.2d 251, 257 n. 9 (3d Cir.1989) (proposed clarifying amendment to Sentencing Guideline Sec. 4A1.1(e)); May Department Stores Co. v. Smith, 572 F.2d 1275, 1277-78 (8th Cir.) (subsequent clarifying amendment of jurisdictional provision of Veterans Administration Act), cert. denied, 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978).
 
 
 45
 The majority opinion construed "organized criminal activity" in the existing guideline as not limited to vehicles or vehicle parts. This is a reasonable construction; nonetheless, in light of the subsequent clarifying amendment, such a construction was evidently not the one that the Sentencing Commission had intended. The Sentencing Commission specifically amended the existing guideline to clarify that the intended scope of the specific offense characteristic of "organized criminal activity" is limited to "an organized scheme to receive stolen vehicles or vehicle parts," for example, "an ongoing, sophisticated operation such as an auto theft ring or 'chop shop.' " Guideline Sec. 2B1.2(b)(5) & application note 4.
 
 
 46
 Because Stumpe's and Walker's offenses did not involve an organized scheme to receive stolen vehicles or vehicle parts, I would hold the district court erred in increasing their offense levels to 14 pursuant to Guideline Sec. 2B1.2(b)(5). I would reverse their sentences and remand their cases to the district court for resentencing.
 
 VALUATION OF LOSS
 
 47
 With respect to Part II, I agree with the majority opinion that, pursuant to Guideline Sec. 2B1.1, loss is ordinarily determined according to the fair market value of the particular property at issue. However, as noted by the majority opinion, the Guidelines do not specify which market is applicable, that is, the wholesale or retail market. In my view, the Guidelines suggest that the appropriate market should be determined with reference to the victim. The Guidelines refer to the victim's "loss" or "harm," as well as the gain to the defendant, and provide that, where the market value is difficult to ascertain or inadequate, the court may measure loss in some other way victim-related way, such as the reasonable replacement cost. Guideline Sec. 2B1.1 application note 2; see United States v. Pemberton, 904 F.2d 515, 517 (9th Cir.1990) (value of stolen technical drawings determined by value to owner, not defendant); cf. United States v. Jenkins, 901 F.2d 1075, 1084 (11th Cir.1990) (value of non-negotiable securities determined by face value, not merely cost to replace stock certificates), petition for cert. filed (U.S. July 16, 1990) (No. 90-5163); United States v. Wilson, 900 F.2d 1350, 1356 (9th Cir.1990) (alternative measurement of loss used because no real "market" for Industrial espionage; rejecting value in "illegal" or black market).
 
 
 48
 In the present case, the victims were wholesale distributors, not retailers. For this reason, I would hold that, for purposes of determining loss under Guideline Sec. 2B1.1, the relevant fair market in the present case is the wholesale market, not the retail market. I do not share the majority opinion's view that there was a failure of proof of the wholesale market value of the stolen cognac. See note 4 supra. Moore presented evidence about the wholesale market value of the stolen cognac based upon information from the respective wholesaler or the shipper or both.
 
 
 49
 Because I would hold the district court should have used a wholesale market value to determine the total loss involved, I would reverse Moore's sentence and remand his case to the district court for resentencing.
 
 
 
 *
 The HONORABLE LYLE E. STROM, Chief Judge, United States District Court for the District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable John F. Nangle, who was Chief Judge of the United States District Court for the Eastern District of Missouri, until he took senior status on May 18, 1990
 
 
 [2]
 The commentary to Guideline Sec. 2B1.1 was amended in 1988 to read as set forth above. The language in the prior comment: "[l]oss is to be based upon replacement cost to the victim or market value of the property, whichever is greater" was deleted. The effective date of the amendment was June 15, 1988. Appellants were sentenced subsequent to that date
 
 
 [3]
 Moore submits that because the Sec. 641 definition of value conforms to the definition of value provided in 18 U.S.C. Sec. 2311, cases construing that statute should apply. See, e.g., United States v. Bakken, 734 F.2d 1273 (7th Cir.1984). Those cases are inapposite for the reason that the test employed under Sec. 2311 is the price a willing buyer will pay to a willing seller either at the time the property was stolen or at any time during receipt or concealment of the property. Id. at 1278. That test has not been followed in this circuit with respect to 18 U.S.C. Sec. 659
 
 
 [4]
 In addition, there is essentially a failure of proof as to the wholesale value of the goods. The actual sales price from defendant to the government does not represent the wholesale price, but represents the black market price. In addition, the Illinois Central Gulf Railroad Company case report places a value of $4,458 on the stolen Hennessy cognac but does not provide a valuation for the remainder of the stolen products. Moore also offers evidence of value according to the St. Louis County police reports. There is nothing in the record to indicate the reliability of such valuation
 
 
 [5]
 This conviction was recently reversed. United States v. Russell, 908 F.2d 405 (8th Cir.1990) (holding 18 U.S.C. Sec. 1029(a)(3) requires possession of at least fifteen (15) stolen credit cards at one time)