958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Durward SEALS, a/k/a James Durwood Seals, Defendant-Appellant.
 No. 91-5604.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 5, 1992.
Decided March 17, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CR-90-338)
 Louis Fireison, Daniel J. Blum, Louis Fireison & Associates, P.A., Bethesda, Md., for appellant.
 Richard D. Bennett, United States Attorney, Ira L. Oring, Assistant United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before K.K. HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 James D. Seals appeals from his sentence imposed by the district court for theft of government owned merchandise. We find that the district court did not err in increasing Seals' sentence because Seals abused a position of trust and the theft was in excess of $10,000 in value. We further find that we may not review the district court's refusal to depart downward from the applicable guideline range. Thus, we affirm.
 
 
 2
 * Seals was a part-time civilian detective at the Bethesda Naval Hospital Exchange [the Exchange]. He pled guilty to and was convicted of stealing from the Exchange government-owned merchandise valued at $76.32. Seals admitted to committing thefts for many years prior to this particular theft. As a store detective, Seals had the keys to the Exchange, knew the access code for the alarm system, and was responsible for apprehending persons suspected of stealing or shoplifting from the Exchange. Although there is no evidence that Seals used the keys and alarm codes in the commission of his crimes, he admits that he stole some items while on duty after the store had closed.
 
 
 3
 An Exchange employee with responsibility for retail pricing testified about the value of the stolen items. She reviewed photographs of the stolen items, inspected those which were recovered, looked up the prices of the items in retail catalogues, and called producers for prices on those items for which catalogue values could not be found. She estimated that the total fair market retail value of the stolen merchandise was $13,656.08.
 
 
 4
 In a plea agreement, the parties stipulated that this additional merchandise was stolen from the Exchange and that its value was relevant to an enhancement of Seals' offense level pursuant to United States Sentencing Commission, Guidelines Manual, § 2B1.1(b)(1) (Nov. 1989). Nevertheless, they reserved the right to contest the extent of this enhancement upon further investigation of the value of the property.
 
 
 5
 At the sentencing hearing, the court found that Seals had abused a position of trust, resulting in a two level increase in his offense level, see U.S.S.G. § 3B1.3 (Nov. 1989), and that the amount of loss to the government was over $10,000, resulting in an additional five level increase in his offense level. The district court sentenced Seals to four months imprisonment and one year of supervised release, including four months confinement in home detention.
 
 
 6
 On appeal, Seals argues that: (1) the district court erred in enhancing his sentence for "abuse of trust" because his position did not facilitate committing the crime and he did not abuse any trust in committing the crime; (2) the district court's calculation of the value of the goods was flawed because it was an approximation and was based on retail prices; and (3) the district court erred in refusing to depart downward on the basis of family ties, community ties, employment history, and personal responsibilities.
 
 II
 
 7
 Because determining whether someone abused a position of trust inherently involves sophisticated factual determinations, the Court will affirm the district court's determination unless it is clearly erroneous. See United States v. Helton, No. 91-5805, slip op. at 4 (4th Cir. Jan. 10, 1992).
 
 
 8
 Section 3B1.3 of the Sentencing Guidelines provides: If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. U.S.S.G. § 3B1.3 (Nov. 1989).
 
 
 9
 Application note 1 which follows the guideline states: The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.
 
 
 10
 Id., comment. (n. 1).
 
 
 11
 Seals argues that the fact that he occupied a position of trust is not relevant unless it "substantially facilitated" the commission of an offense. He maintains that his possession of the alarm code and keys is not relevant to a determination of abuse of a position of trust because it did not facilitate commission of the offense.
 
 
 12
 Seals' position as store detective gave him other unique advantages for theft not available to the average shoplifter or embezzling bank teller. See United States v. Hill, 915 F.2d 502, 507-08 (9th Cir.1990). Seals' decision to steal from the store after it had closed reduced the likelihood of his detection and increased his chances of getting away with the goods because of the relaxed security following closing. Also, his position as store detective probably facilitated his thefts during store hours because he likely was under less scrutiny than other people in the store and knew about store security measures. Thus, as compared to other would-be thieves, Seals' position made his crimes particularly difficult to detect. See United States v. Helton, slip op. at 5; United States v. Hill, 915 F.2d at 506. The district court's finding that Seals abused a position of trust was not clearly erroneous.
 
 III
 
 13
 The dispute concerning the fair market value of the items stolen requires resolution of two related issues: (1) whether the Guidelines permit valuation of the loss based on list retail prices; and (2) whether the evidence submitted by the government was sufficient to establish by a preponderance of the evidence that the retail price of the goods was greater than $10,000. See United States v. Harris, 882 F.2d 902, 907 (4th Cir.1989) (preponderance standard). The first of these questions involves a legal interpretation of a Guidelines provision, which requires de novo review. See United States v. Saintil, 910 F.2d 1231, 1232 (4th Cir.1990). The second is essentially a factual question, requiring the Court to accept the district court's conclusions unless they are clearly erroneous. See United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989).
 
 
 14
 Under U.S.S.G. § 2B1.1(b)(1)(F), if the "loss" to the government is more than $10,000, an increase of five in offense level is imposed. The Sentencing Commission commentary defines "loss" as:
 
 
 15
 the value of the property taken, damaged or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim. U.S.S.G. § 2B1.1, comment. (n. 2.) (Nov. 1989). As background, the Commission also notes:
 
 
 16
 The value of property taken plays an important role in determining sentences for theft offenses, because it is an indicator of both the harm to the victim and the gain to the defendant.
 
 
 17
 Id. (backg'd).
 
 
 18
 Seals argues that the retail prices of the items do not indicate the "loss" to the government, because all the Exchange lost was the amount of money it paid for the items. The stolen items, he argues, were not unique or difficult to replace, were presumably bought in bulk, and the government has not shown that it lost a single sale as a result of the thefts. He cites application note two for the proposition that "loss" was intended to be measured entirely in terms of harm to the victim or "reasonable replacement cost to the victim." As a result, he asserts that the "value" of the loss should be recalculated using wholesale prices.
 
 
 19
 In evaluating losses to retail outlets it is reasonable to measure fair market value in terms of the retail value of the goods, as the district court did in this case. See United States v. Russell, 913 F.2d 1288 (8th Cir.1990), cert. denied, 59 U.S.L.W. 3741 (U.S.1991); United States v. Burns, 894 F.2d 334 (9th Cir.1990). Moreover, if fair market value is difficult to ascertain, the language of the Sentencing Commission's commentary suggests considerable flexibility in the "other way[s]" a court may evaluate the loss, which may take into account "both the defendant's gain and the victim's harm." See United States v. Pemberton, 904 F.2d 515, 517 (9th Cir 1990). Thus, the district court's use of retail value is defensible as either the suggested "fair market value" or as a permissible alternative measure of loss. Id. at 517 n. 2.
 
 
 20
 The sentencing guidelines allow values to be "inferred from any reasonably reliable information available," and do not require that the loss be determined with precision. U.S.S.G. § 2B1.1, comment. (n. 3). The government meets its burden of proof if the prices can reasonably be so inferred by a preponderance of the evidence. Cf. United States v. Harris, 882 F.2d at 907 (preponderance proper standard of proof in resolving factual disputes regarding sentencing). Considering the weight and accuracy of the evidence of retail prices presented in this case, the court's determination that the loss exceeded $10,000 was not clearly erroneous. See United States v. Daughtrey, 874 F.2d at 218.
 
 IV
 
 21
 A Court's refusal to depart downward can only be reviewed on appeal if it is "imposed in violation of the law." See United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 59 U.S.L.W. 3244 (U.S.1990). This exception applies only in a narrow class of circumstances such as where a district court refuses to depart based on the mistaken view that it was without authority to do so. Id. The district court in this case recognized its authority to depart but properly declined to do so because prior work history, family responsibilities, and community ties are not ordinarily relevant to this decision. See U.S.S.G. §§ 5H1.5, 5H1.6. This Court will not review the district court's decision on this issue.
 
 
 22
 Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 23
 AFFIRMED.