**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jesse ESQUIVEL, Defendant–Appellant.**

No. 90–5542.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1990.

John M. Pinckney, III, Matthews & Branscomb, San Antonio, Tex., for defendant-appellant.

Joan E.T. Sterns, LeRoy M. Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA[1], District Judge.

GARWOOD, Circuit Judge:

Defendant-appellant Jesse Esquivel (Esquivel) pleaded guilty to possession of chattels stolen from foreign commerce, a violation of 18 U.S.C. § 659, and was sentenced in accordance with former sentencing guideline section 2B1.2[2] to twenty-one months' confinement, three years' supervised release, and payment of a fine, special assessment, and restitution. This guideline provides for a four-point offense level enhancement where "the offense was committed by a person in the business of receiving and selling stolen property." U.S.S.G. § 2B1.2(b)(3)(A). On appeal, Esquivel challenges only the district court's application of this section to enhance his guideline offense level, contending that, be-

---

1. District Judge of the Southern District of Texas, sitting by designation.

2. Sentencing Guideline section 2B1.2 was amended effective November 1, 1990. This amendment made only minor changes which are irrelevant to issues raised on appeal.

cause there concededly was no evidence he had previously engaged in "fencing" of stolen property other than that he was charged for having possessed, he therefore was not "in the business of" receiving and selling stolen property as required by former section 2B1.2(b)(3)(A).

## Facts and Proceedings Below

On or about January 11, 1989, Esquivel was approached by Elistino Rodriguez (Rodriguez) and Augustine Zuliaca (Zuliaca) about purchasing an order of Kaepa athletic shoes. The men had stolen 1,013 cases of the shoes a few days earlier from a freight storage yard in San Antonio, Texas. Esquivel knew that the shoes had been stolen. Esquivel acquiesced, and moved 350 cases of the shoes from Zuliaca's garage into a warehouse which Esquivel leased and controlled. Esquivel sold the shoes on consignment to various parties for $15 per pair, keeping $5 per pair for himself and paying the remainder to Rodriguez.

Esquivel was assisted in the resale of the shoes by his cousin David Vasquez (Vasquez). Esquivel would contact Vasquez through a pager, giving him information regarding the customer, date, and quantity for purposes of making deliveries. Esquivel personally sold fifty to sixty pairs of the shoes. No evidence was ever presented that Esquivel had acted as a fence prior to the initiation of his shoe-selling business. Esquivel normally ran a back-hoe business, from which he derived an annual income of $20,000 to $30,000.

Esquivel pleaded guilty to possession of chattels stolen from foreign commerce, a violation of 18 U.S.C. § 659. On March 15, 1990, the district court sentenced him in accordance with former sentencing guideline section 2B1.2, which is the guideline applicable to section 659. The base offense level for this sentencing guideline is four. The district court added six points for a loss in excess of $20,000 but less than $40,001, added two more points for role in the offense, and subtracted two points for acceptance of responsibility. The district court's four-level increase of Esquivel's offense level in accordance with former section 2B1.2(b)(3)(A), which provides for such an increase "[i]f the offense was committed by a person in the business of receiving and selling stolen property," resulted in a net total offense level of fourteen. Considering that Esquivel's criminal history category was I, this produced a guideline range of fifteen to twenty-one months. Esquivel was sentenced to twenty-one months in prison and a three-year term of supervised release, and ordered to pay a fine of $3,000, a special assessment of $50, and restitution of $12,559.09. On appeal, Esquivel challenges only the section 2B1.2(b)(3)(A) four-level increase in his offense level, claiming that the district court incorrectly concluded that he was in the business of receiving and selling stolen property.

## Discussion

■ Esquivel argues, and the government does not dispute, that the phrase "a person in the business of receiving and selling stolen property" in former section 2B1.2(b)(3)(A) refers to a person engaged in what are generally known as fencing operations, that is, the receiving and selling of stolen goods. *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir.1990); *United States v. Russell*, 913 F.2d 1288, 1294 (8th Cir.1990).[3] Esquivel argues that the

---

**3.** Esquivel contends that *Russell* ruled that a finding that the defendant was a fence for the purposes of former section 2B1.2(b)(3)(A) required evidence that the defendant fenced stolen property other than the property that he was charged with possessing. Although *Russell* relies exclusively on evidence that the defendant resold property other than that which he was charged with possessing in holding that the defendant's sentence was properly enhanced under former section 2B1.2(b)(3)(A), the Court did not state or expressly suggest that evidence of resale of the property that the defendant was charged with possessing could not also have sustained its holding. Furthermore, in *Russell* the resale of the property that the defendant was charged with possessing was accomplished in one transaction. Thus, even if *Russell* had held that this evidence could not alone have sustained a sentence enhancement under former section 2B1.2(b)(3)(A), such a holding would be distinguishable from the instant case, in which the defendant accomplished the resale of the stolen property that he was charged with possessing in not one but many transactions, in

sentencing guideline refers only to persons who have previously engaged in fencing property other than that which they have been charged with possessing. Esquivel essentially claims that the guideline was not intended to treat an established fence the same as a "green" fence such as himself.

The government relies on the background to the section 2B1.2 commentary in arriving at a different interpretation of the guideline. This background reads as follows:

> "The treatment accorded receiving stolen property parallels that given theft. Persons who receive stolen property for resale receive a sentence enhancement because the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes."

The government argues that the background applies to veterans and neophytes alike. A thief need not know the length of his fence's résumé to be encouraged to commit other crimes by the successful resale of property he has stolen.

■ The Seventh Circuit's decision in *Braslawsky* is essentially premised on this interpretation of the background. In *Braslawsky*, the defendant had stolen property and then later resold it himself. The Court held that former sentencing guideline section 2B1.2(b)(3)(A) was inapplicable because "the common understanding of a person in the business of receiving and selling stolen property is a professional fence and not a person who sells property that he has already stolen." *Braslawsky*, 913 F.2d at 468. The Court explained that the background in the commentary applies only to " '[p]ersons who receive stolen property *for resale* ' " because "[t]he criminal who sells his own booty does not encourage the commission of other thefts in the same manner." *Id.* (emphasis in original). It is because *someone else* stole the shoes sold by

Esquivel that the commission of other crimes was encouraged and that the fencing operation falls within the intended purview of the background to and text of former section 2B1.2(b)(3)(A).

Esquivel contends that reference to the commentary should not be allowed to alter the clear import of the language of the guideline itself. Esquivel argues that the phrase "in the business of" implies a prior course of conduct exclusive of the conduct that forms the basis of the immediate charge. He contends that for the district court to find him to have been "in the business of" receiving and selling stolen property, there must be evidence that he had previously fenced stolen property other than the property that he was arrested for possessing. We reject Esquivel's interpretation of the guideline.

■ Esquivel's operation amounted to a business. As noted, Esquivel in substance acted as the manager of an organized commercial enterprise engaged in making multiple sales from a stock of stolen merchandize, employing an electronic communications system to place orders with his assistant and allocating income in accordance with a consignment plan. In the nine days between the time that Esquivel took possession of the 350 cases of athletic shoes and the time that he was arrested, Esquivel managed to earn approximately $8,520 from his fencing activities, an amount constituting a substantial percentage of his estimated annual back-hoe business income.[4] The shoes were sold out of a central storage location and were distributed to multiple customers. Receiving and reselling stolen property accurately describes what Esquivel was "in the business of" doing.

■ Esquivel seeks to draw an analogy to the definition of a firearms dealer in 18 U.S.C. § 921 in support of his narrower interpretation of "in the business of." Sections 921(a)(11)(A) & (B) of Title 18 define a

---

the course of what could be appropriately characterized as an ongoing, businesslike operation.

**4.** If Esquivel sold and collected his $5 commission on all 142 unrecovered cases of athletic shoes, his income would have been $8,520, or approximately thirty-five per cent of an assumed backhoe business income of $25,000. Had Esquivel sold all 350 cases of shoes, his income would have been $21,000.

firearms dealer as "(A) any person engaged in the business of selling firearms at wholesale or retail, [or] (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms." Section 921(a)(21)(C) defines the section 921(a)(11)(A) term "engaged in the business" as a

> "person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." [5]

Esquivel argues that this definition suggests that the fact that he was gainfully employed in a business other than fencing precludes a finding that he was in the business of receiving and selling stolen property.

We do not find that the language of section 921(a)(21)(C) requires that dealing in firearms be a full-time occupation. Nor does former sentencing guideline section 2B1.2(b)(3)(A) suggest that a fence should receive a sentence enhancement only where fencing is his or her principal vocation. Moreover, although Esquivel's acquisition of shoes was not repetitive, his sales certainly were until abruptly terminated by the authorities. He did not merely store the shoes. We need not here determine whether—on analogy to section 921(a)(21)(C) or otherwise—section 2B1.-2(b)(3)(A) would not apply to one or two isolated, unrelated casual sales of stolen goods that did not rise to the level of a business.

In any case, we decline to rely on section 921(a)(21)(C) in preference to the unambiguous language of the background to the very section being interpreted. If we were to require assistance from outside sources in interpreting section 2B1.2(b)(3)(A), reliance is properly placed on the commentary to that section rather than on strained analogies to the criminal code. As noted, the commentary supports the most natural reading of the language of the sentencing guideline. There is nothing to suggest that our inquiry need proceed any further.

### Conclusion

We hold that a finding that a defendant has previously engaged in fencing activities is not a prerequisite for offense level enhancement under former sentencing guideline section 2B1.2(b)(3)(A). Esquivel demonstrates no error in the district court's finding that he was in the business of receiving and selling stolen property for purposes of former section 2B1.2(b)(3)(A). Accordingly, Esquivel's conviction and sentence are

AFFIRMED.

---

5. Section 921(a)(21)(D) defines the term "engaged in the business" in section 921(a)(11)(B) as a
> "person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms."

Sections 921(a)(21)(A), (B), (E) & (F) further define the term "engaged in business" as applied to a manufacturer or importer of firearms or ammunition. These definitions do not meaningfully differ from those provided in sections 921(a)(21)(C) & (D) for the purposes of analogy to former sentencing guideline section 2B1.-2(b)(3)(A).