USCA1 Opinion

 

 October 15, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1639 UNITED STATES OF AMERICA, Appellee, v. JOHN L. ST. CYR, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boyle,* District Judge. ______________ _________________________ Jeffrey D. Clements, with whom Jensen Baird Gardner & Henry ___________________ ____________________________ was on brief, for appellant. Margaret D. McGaughey, Assistant United States Attorney, ______________________ with whom Richard S. Cohen, United States Attorney, and Jonathan ________________ ________ R. Chapman, Assistant United States Attorney, were on brief, for __________ appellee. _________________________ _________________________ ___________ *Chief Judge, United States District Court for the District of Rhode Island, sitting by designation. SELYA, Circuit Judge. After twice visiting a famed New SELYA, Circuit Judge. _____________ England clothier and successfully exchanging stolen sweaters for cash, defendant-appellant John L. St. Cyr botched his third attempt. Confronted with the irrefragable threads of his criminality, St. Cyr pled guilty to two counts of possessing stolen property (each count representing a successful exchange). Although the two offenses occurred only four months apart, the federal sentencing guidelines intervened.1 Appellant received a pre-guidelines sentence on the first count (two years) and a concurrent guideline-driven sentence on the second count (fourteen months). He will be eligible for parole on the two- year sentence after approximately eight months. No parole is possible on the other sentence. St. Cyr appeals the lower court's judgment in its entirety. We affirm with respect to the first count. However, after studying the district court's construction of U.S.S.G. 2B1.2(b)(4)(A), a guideline never before interpreted by this court, we vacate the sentence imposed on the second count and remand for resentencing on that count. The yarn follows. I. FACTS I. FACTS In late 1986, thieves snatched a trailer load of pre- labelled sweaters and dresses bound for two retail clothing ____________________ 1All references herein are to the sentencing guidelines in effect on the date appellant was sentenced, May 21, 1992. See ___ United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. _____________ __________ 1990) ("Barring any ex post facto problem, a defendant is to be _____________ punished according to the guidelines in effect at the time of sentencing.") (citing 18 U.S.C. 3553(a)(4)). 2 stores. The trailer soon reappeared in Methuen, Massachusetts. By then, it was under the apparent control of Thomas Flaherty. Flaherty sold most of the loot to Francis McKay, the proprietor of A & M Auto Wholesalers, Lawrence, Massachusetts (and, in that capacity, St. Cyr's employer). In time, appellant bought twenty-two stolen sweaters from McKay.2 He divided the sweaters into three roughly equal groups and "returned" them to an affected retailer, L.L. Bean Co., requesting that Bean "refund" the retail price. Appellant received $399.20 in refunds for the first two batches of sweaters. On his third attempt, a store employee refused to give him cash and asked him for a mailing address. Police traced the address and confronted St. Cyr. He confessed. II. THE SENTENCE ON COUNT I II. THE SENTENCE ON COUNT I In what amounts to a passing reference, St. Cyr suggests that his sentence on count I was "plainly unreasonable" and should be vacated. We refuse to give this point substantive consideration for two reasons. First, Congress created appellate jurisdiction with respect to "plainly unreasonable" criminal sentences on December 7, 1987, and made the grant of jurisdiction applicable only to criminal acts committed after that date. See ___ Sentencing Act of 1987, Pub. L. No. 100-182, 26, 101 Stat. 1266, 1272 (1987), codified at 18 U.S.C. 3742(a)(4) (1988). ________ __ Count I targets St. Cyr's first trip to L.L. Bean. That trip ____________________ 2There is some confusion in the record as to whether St. Cyr bought the sweaters on two or three different occasions. 3 took place in October of 1987. Hence, section 3742(a)(4) does not avail him here. Second, appellant has offered no meaningful rationale as to why the sentence imposed on count I was unreasonable or otherwise defective. It is settled in this circuit that "issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990); accord ____ ______________ ______ United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. ______________ _______ _____ denied, 494 U.S. 1082 (1990). That principle is fully apposite ______ here. III. THE SENTENCE ON COUNT II III. THE SENTENCE ON COUNT II With reference to count II, the base offense level (BOL) applicable to the offense of conviction was four. See ___ U.S.S.G. 2B1.2(a). The district court elevated the BOL by one level because the value of the twenty-two sweaters was $572.70. See U.S.S.G. 2B1.1(b)(1)(B), 2B1.2(b)(1) (directing a one- ___ level increase for goods worth more than $100 but less than $1000). The court added four more levels because St. Cyr was "in the business of receiving and selling stolen property . . . ." U.S.S.G. 2B1.2(b)(4)(A). The court explained that it utilized the four-level enhancement because it "infer[red] that from [St. Cyr's] willingness and [the] easy manner in which he came into participation in this [affair] . . . he was a person predisposed in buying and selling stolen property." Finally, the court made two offsetting adjustments. It went up two levels for 4 obstruction of justice, see U.S.S.G. 3C1.1, and down two levels ___ for role in the offense. See U.S.S.G. 3B1.2(b) (adjustment for ___ minor participation). Given St. Cyr's checkered past, these calculations resulted in a guideline range of 8-14 months. See U.S.S.G. Ch. ___ 5, Pt. A (sentencing table) (offense level 9; criminal history category III). The judge imposed the maximum authorized sentence within the range. On appeal, St. Cyr challenges the four-level enhancement for being "in the business of receiving and selling stolen property" and the two-level enhancement for obstruction of justice. A. Standard of Review. A. Standard of Review. __________________ Appellate review of a district court's application of the sentencing guidelines is ordinarily a dichotomous process. First, the court of appeals determines de novo the reach of the __ ____ relevant guideline to ascertain whether it applies in a given case. See, e.g., United States v. Tardiff, 969 F.2d 1283, 1289 ___ ____ _____________ _______ (1st Cir. 1992); United States v. Connell, 960 F.2d 191, 197 (1st _____________ _______ Cir. 1992). Once the court of appeals has defined the guideline's meaning and scope, it reviews the sentencing court's factfinding only for clear error. See United States v. David, ___ ______________ _____ 940 F.2d 722, 739 (1st Cir. 1991), cert. denied, 112 S. Ct. 2301 _____ ______ (1992); see also 18 U.S.C. 3742(e) (1988). Accordingly, we ___ ____ cede no deference to the district court's legal conclusion that a _____ defendant's inferred predisposition toward fencing activities 5 brings him within the ambit of section 2B1.2(b)(4)(A).3 B. The Four-Level Enhancement. B. The Four-Level Enhancement. __________________________ 1. The "Fencing Business" Requirement. The master 1. The "Fencing Business" Requirement. ____________________________________ guideline for "receiving, transporting, transferring, transmitting, or possessing stolen property," U.S.S.G. 2B1.2 (excess capitalization omitted), starts at a BOL of four. The guideline directs the district court to increase the offense level in a variety of circumstances. Section 2B1.2(b)(4)(A) limns one such circumstance, mandating a four-level increase if "the offense was committed by a person in the business of receiving and selling stolen property . . . ." The Sentencing Commission explains this enhancement which we shall call the "in-the-business" or "ITB" enhancement on the basis that, when persons receive stolen property for resale, "the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes." U.S.S.G. 2B1.2, comment. (backg'd). As with any other upward adjustment under the sentencing guidelines, the government bears the burden of establishing that the ITB enhancement applies in a given case. See, e.g., United States v. ___ ____ _____________ Sklar, 920 F.2d 107, 110 (1st Cir. 1990); United States v. Unger, _____ _____________ _____ 915 F.2d 759, 761 (1st Cir. 1990), cert. denied, 111 S. Ct. 1005 _____ ______ ____________________ 3The government suggests that United States v. Russell, 913 _____________ _______ F.2d 1288 (8th Cir. 1990), cert. denied, 111 S. Ct. 1687 (1991), _____ ______ imports a more deferential standard of review. We reject this suggestion. While the Russell court was admittedly hazy about _______ the precise standard of review, the court's basic holding was that "factual findings . . . will not be upset unless clearly _______ ________ erroneous." Id. at 1294 (emphasis supplied). ___ 6 (1991). There is a dearth of authority concerning the scope of section 2B1.2(b)(4)(A) and the guidelines are silent on the meaning of the pivotal phrase: "in the business of . . . ." We have never spoken to section 2B1.2(b)(4)(A). Courts outside our circuit have dealt with the provision sparingly. The government urges that we need not look beyond the background commentary, quoted supra p. 6, to resolve the _____ essential meaning of the section 2B1.2(b)(4)(A). The commentary's motivating purpose is apparent. An underworld business causes greater community blight than an intermittently criminal individual. Nonetheless, the commentary leaves more specific issues unresolved; taken literally, it proves too much. For one thing, facilitation of other crime and underrepresentation of criminal activity are probably present whenever stolen property is bought or sold. Like any market, the black market's efficiency is generally proportional to the number of buyers and sellers that enter it. Thus, even purchasers of stolen goods who never sell and sellers of stolen goods who never purchase can strengthen the black market and thereby facilitate other crime. For another thing, individuals convicted of any crime not just those who deal in stolen property are often presumed to have committed or supported other, non-charged, offenses. Indeed, this presumption is thought to be so strong that Fed. R. Evid. 404(b) prohibits the introduction into evidence of a 7 defendant's prior acts to show his criminal predisposition. It is almost always possible to argue that the conduct for which a defendant has been convicted is likely to underrepresent his entire criminal career or his contribution to a general subculture of criminality. There is no sound basis on which trafficking in stolen property, per se, can be singled out in ___ __ this respect. Finally, and perhaps most tellingly, it would be senseless to presume that the enhancement identifies exactly the same conduct as the base offense itself. If the Sentencing Commission wished to ensure stiffer sentences for all those who receive and sell stolen property, it could have simply raised the base offense level. There must, then, be a limiting principle beyond simply facilitation or underrepresentation of criminal activity some smaller subclass to which the enhancement refers. We think this is what the Sentencing Commission intended. To state this conclusion does not, however, determine the end result. A few courts have suggested the possibility of restricting the guideline to so-called professional fences. See, ___ e.g., United States v. Esquivel, 919 F.2d 957, 960 (5th Cir. ____ _____________ ________ 1990). Notwithstanding that professional fences are essentially black market speculators who ease the buying and selling of stolen goods by simplifying market entrance for supplies of stolen property, we do not believe that focusing on them is necessarily a step forward. Defining the term "professional fence" is as chancy as defining the language of the guideline 8 itself. We conclude that there is no bright line that separates defendants who are "in the business" of dealing in stolen property from those who are not so engaged. Therefore, in mulling whether to impose the ITB enhancement, the sentencing judge must undertake a case-by-case approach, weighing the totality of the circumstances, with particular emphasis on the regularity and sophistication of a defendant's operation, in order to determine whether a defendant is "in the business" of receiving and selling stolen property. We think this assessment fits harmoniously with the Commission's likely rationale and with the decisions of those few circuit courts that have addressed the meaning of section 2B1.2(b)(4)(A). Despite the differences in analytic approach, these courts, either implicitly or explicitly, judge whether a defendant was engaged in the business of buying and selling stolen property by surveying the overall circumstances and studying the permissible inferences that can be drawn therefrom. See, e.g., United States v. Connor, 950 F.2d 1267, 1275 (7th Cir. ___ ____ _____________ ______ 1991) (stressing the importance of past criminality to an ITB determination); Esquivel, 919 F.2d at 960 (assessing the ________ characteristics of defendant's fencing operation and finding it sufficiently businesslike); United States v. Braslawsky, 913 F.2d _____________ __________ 466, 466 (7th Cir. 1990) (finding that the defendant was not "in the business" where he sold only goods that he, himself, had stolen). 9 2. Pertinent Considerations. Under the approach we 2. Pertinent Considerations. ________________________ endorse today, a district court should weigh a number of circumstances in its effort to determine whether the ITB enhancement applies in a particular instance. The most important factor is likely to be the regularity of the defendant's dealings in stolen merchandise. In searching for evidence of regularity, we do not suggest that selling stolen property must be the dominant source of a defendant's income before his felonious activities become sufficiently prominent to be regarded as a business. See, e.g., Esquivel, 919 F.2d at 960 & n.4 (concluding ___ ____ ________ that an ITB enhancement was appropriate for a defendant who earned 25% of his total income from selling stolen property). Nevertheless, a sentencing court can certainly consider evidence about the amount of income generated through fencing activities, the defendant's past activities, his demonstrated interest in continuing or expanding the operation, and the value of the property handled. Where there is no indication either of a pattern of dealing in stolen property or of a developed operation that promises such consistency for the future, the defendant is unlikely to be "in the business." See Connor, 950 F.2d at 1275 ___ ______ (noting in dictum that only those persons "who have previously engaged in significant illegal conduct which is similar" to fencing will merit a section 2B1.2(b)(4)(A) enhancement). But ___ cf. Esquivel, 919 F.2d at 957 (implicitly rejecting a regularity ___ ________ requirement in finding a new, but very sophisticated, fencing operation to be a business). 10 We envision a useful parallel between U.S.S.G. 2B1.2(b)(4)(A) and another guideline which allows an ITB enhancement. An individual convicted of tax fraud rates an upward adjustment in his offense level if the individual is "in the business of preparing or assisting in the preparation of tax returns . . . ." U.S.S.G. 2T1.4(b)(3). The enhancement applies to those people who "regularly act" as tax preparers or advisers. See id., comment. (n.3). Indeed, regularity of ___ ___ conduct is one universal thread in virtually all legal definitions of business. See, e.g., United States v. Muskovsky, ___ ____ _____________ _________ 863 F.2d 1319, 1327 (7th Cir. 1988) (construing the phrase "business enterprise" in the Travel Act, 18 U.S.C. 1952), cert. _____ denied, 489 U.S. 1067 (1989). United States v. Lignarolo, 770 ______ _____________ _________ F.2d 971, 979 (11th Cir. 1984) (construing a similar phrase in respect to the RICO statute, 18 U.S.C. 1961-1968), cert. _____ denied, 476 U.S. 1105 (1986); United States v. Van Buren, 593 ______ _____________ _________ F.2d 125, 126 (9th Cir. 1979) (observing that business necessitates "activity . . . greater than the occasional sales"). In those contexts, courts have insisted that more than isolated, casual, or sporadic activity be shown before a business is found to exist.4 Citing Esquivel, 919 F.2d 957, the government argues ________ ____________________ 4On several other occasions, the guidelines use the term "business" without commenting on its meaning. See, e.g., ___ ____ U.S.S.G. 2E3.1 (discussing defendant's engagement in a gambling business); U.S.S.G. 2B6.1(b)(2) (discussing an enhancement for being "in the business of receiving and selling" stolen motor vehicles or parts). 11 that regularity is a sufficient, but not always necessary, condition for the ITB enhancement. In that case, the defendant, Esquivel, purchased 350 pairs of stolen shoes. He quickly installed an elaborate fencing operation, e.g., renting a ____ warehouse to store the shoes, carrying a telephone pager so that his customers could keep in touch with him, and the like. He also implemented a sale-by-consignment system and hired a deliveryman. He did not make casual or isolated sales. Id. at ___ 961. The Fifth Circuit concluded that, regardless of whether Esquivel had a history of fencing activities, his operation was sufficiently organized and complex that the district court could supportably have found him to be "in the business" of selling stolen goods for purposes of section 2B1.2(b)(4)(A). Id. at 960. ___ We agree that the sophistication of the defendant's operation is a second circumstance that may itself indicate business conduct. We can easily imagine situations in which a fencing business, although very much a business, has been recently launched and therefore traces no historical pattern. In order to distinguish a new-to-the-business fence from an amateur, however, the government must at least offer a meaningful proxy for regularity, say, by showing that the operation crossed a threshold of sophistication and commitment. 3. Applying the Criteria. On this sparse record, the 3. Applying the Criteria. _____________________ district court could not plausibly find either regularity or sophistication. The record is barren of any indication that St. Cyr had conducted other fencing operations. His three jaunts to 12 L.L. Bean do not suggest regularity to the degree necessary to constitute a business. By the same token, his operation was primitive: he had no elaborate communication or distribution system, he did not employ assistants, he did not maintain a sizable inventory of stolen goods. Of course, had St. Cyr not been apprehended, he might have continued to ply his fraudulent sweater-return scheme. At some point, the scheme might have become sufficiently institutionalized to meet the ITB requirement. But here, the district court largely negated this possibility, finding St. Cyr to be responsible, for relevant conduct purposes, see U.S.S.G. 1B1.3(a), only for those twenty- ___ two sweaters that he actually purchased from McKay, not for the entire shipment of stolen merchandise. We will light no more candles on this cake. The government has simply not produced a quantum of evidence sufficient to show, by any reasonable standard, that appellant was engaged in a business.5 In the absence of any indication that St. Cyr had installed or was developing a systematic operation that would regularly fence stolen property, we find his casual trafficking in sweaters insufficient, in the totality of the circumstances, to justify an enhancement under U.S.S.G. ____________________ 5The district court rested its determination that St. Cyr's activities constituted a business on what the court saw as his predisposition to deal in stolen property. While we do not dispute the court's conclusions anent St. Cyr's moral fiber (or lack thereof), his predisposition, without more, is not legally relevant to the appropriateness of a section 2B1.2(b)(4)(A) enhancement. Whether a defendant is engaged in business within the meaning of the sentencing guidelines is a test of conduct, not character. 13 2B1.2(b)(4)(A). C. Obstruction of Justice. C. Obstruction of Justice. ______________________ Appellant asserts that the district court incorrectly applied a two-level enhancement for obstruction of justice en route to establishing the sentencing range for count II. The relevant guideline reads: If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. U.S.S.G. 3C1.1. The district court found that appellant's conduct warranted an upward adjustment under this guideline because he "provid[ed] materially false information to a probation officer in respect to a presentence . . . investigation for the court." U.S.S.G. 3C1.1, comment. (n.3(h)). The pivotal facts are these. Following St. Cyr's guilty plea, a probation officer interviewed him in the course of compiling the presentence report. In recounting his prior criminal record, St. Cyr did not mention three Massachusetts larceny convictions that occurred in 1978. He also failed to inform the officer that he pled guilty less than a year earlier to having falsely uttered a check. Although these omissions were eventually rectified, the officer testified that St. Cyr's failure to provide a complete record of his prior convictions resulted in a substantial delay in completing the presentence report. St. Cyr's first argument is that his omissions should 14 not be penalized because they caused no actual prejudice to the government. But, this protest overlooks the milieu in which the omissions occurred. Presentence reports are important ingredients of the sentencing process and, thus, vital to the administration of the criminal justice system. Hence, a defendant has a solemn obligation to be forthcoming with a probation officer to ensure that the court receives complete, accurate information. Providing materially false information to a probation officer in respect to a presentence report is culpable and can constitute obstruction of justice even absent a showing of actual prejudice.6 See United States v. Dedeker, 961 ___ _____________ _______ F.2d 164, 167 (11th Cir. 1992); United States v. Baker, 894 F.2d _____________ _____ 1083, 1084 (9th Cir. 1990). Relying on United States v. Tabares, 951 F.2d 405 (1st _____________ _______ Cir. 1992), appellant also asseverates that the government did not prove materiality. In Tabares, a codefendant, Ramirez, _______ relayed an inaccurate social security number in the course of the presentence investigation. The district court went up two levels for obstruction. We reversed. Id. at 411-12. We noted there ___ was no evidence that Ramirez willfully lied about his social security number. Id. at 411. We then theorized that, even if ___ ____________________ 6For this reason, St. Cyr's repeated citation of cases falling outside the ambit of Application Note 3(h) do not assist his cause. Most of these authorities involve preconviction statements made to law enforcement officers. Such statements invoke Application Note 3(g) and require a showing that the falsehood "significantly obstructed or impeded the official investigation or prosecution . . . ." U.S.S.G. 3C1.1, comment. (n.3(g)). Application Note 3(h) contains no such requirement. 15 Ramirez had prevaricated, his statement could not have impeded the investigation in any material way because Ramirez had been using the same incorrect number for several years. Id. ___ The case at bar is easily distinguishable. Unlike in Tabares, the criminal history that St. Cyr omitted was material _______ on its face. See, e.g., U.S.S.G. 3C1.1, comment. (n.5) ___ ____ (defining "material . . . information" as "information that, if believed, would tend to influence or affect the issue under determination"). Under the guidelines, sentencing ranges rest in substantial part upon a defendant's criminal history. Bearing in mind that the test of materiality for purposes of Application Note 3(h) is not a stringent one, see, e.g., Dedeker, 961 F.2d at ___ ____ _______ 167, we do not hesitate to hold that a defendant's concealment of important information about his criminal record is a material omission for purposes of U.S.S.G. 3C1.1. See id.; accord ___ ___ ______ United States v. Delgado, 936 F.2d 303, 306 (7th Cir. 1991), ______________ _______ cert. denied, 112 S. Ct. 972 (1992). _____ ______ This brings us to appellant's third, and last, exhortation: that the district court erred in branding his omissions as willful. While we review questions addressing the scope of U.S.S.G. 3C1.1 de novo, see United States v. Manning, __ ____ ___ _____________ _______ 955 F.2d 770, 774 (1st Cir. 1992), we are called upon here to oversee the inferences the court drew from St. Cyr's conduct and from the witnesses' credibility. Factbound determinations of this sort are reviewable only for clear error. See United States ___ _____________ v. Akitoye, 923 F.2d 221, 229 (1st Cir. 1991). _______ 16 St. Cyr argued to the district court that his omissions were inadvertent; he had simply forgotten about his previous convictions under the stress of the moment. On that basis, he claimed that his failure to provide a complete record of his criminal past was not willful. The district court listened to St. Cyr testify on this point and "specifically [did] not find that . . . [his] testimony [was] persuasive and credible with respect to his version of those circumstances." The court also heard from the probation officer, who provided a markedly different account of the interview and of St. Cyr's later reaction to the officer's independent discovery of the unmentioned convictions. In the end, the court found that St. Cyr had intentionally misled the probation officer by omitting several convictions from his criminal history; and that, as a result,the preparationofthepresentencereportwasneedlesslydelayed. In the sentencing phase, credibility determinations lie within the domain of the district court. Only rarely and in the most urgent circumstances will we, from the vista of a sterile appellate record, meddle in such matters. There is no legitimate reason to do so here.7 Thus, this issue assumes a ____________________ 7U.S.S.G. 3C1.1, comment. (n.1) suggests that, in applying the obstruction-of-justice guideline, the defendant's "testimony or statements should be evaluated in a light most favorable to [him]." St. Cyr says that the proper application of this language requires that all evidentiary conflicts be resolved in favor of the defendant. We have held many times, however, that the Sentencing Commission did not mean to give defendants so dazzling a prize. See United States v. Torres, 960 F.2d 226, 228 ___ _____________ ______ (1st Cir. 1992); United States v. Brum, 948 F.2d 817, 819 (1st _____________ ____ Cir. 1991); United States v. Rojo-Alvarez, 944 F.2d 959, 969 (1st _____________ ____________ Cir. 1991); United States v. Aymelek, 926 F.2d 64, 68 (1st Cir. _____________ _______ 1991); Akitoye, 923 F.2d at 228-29. Rather, the language means _______ that, in a borderline case one where the judge, after scrutinizing the evidence, has no firm conviction one way or the 17 familiar cast: when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous. See United States v. Ruiz, 905 F.2d 499, 508 ___ _____________ ____ (1st Cir. 1990). The obstruction-of-justice enhancement must stand. IV. CONCLUSION IV. CONCLUSION We need go no further. The defendant's convictions are affirmed, as is his sentence on count I. But, because the district court incorrectly applied the guideline enhancement for those in the business of dealing in stolen property, we vacate the sentence imposed on count II and remand for resentencing in accordance with this opinion. Affirmed in part; vacated in part; remanded. Affirmed in part; vacated in part; remanded. ___________________________________________ ____________________ other the defendant should be given the benefit of the doubt. In light of the district court's emphatic findings, the quoted language has no applicability here. 18