UNITED STATES of America, Appellee,

v.

Mario SALEMI, Defendant–Appellant.

No. 520, Docket 94–1225.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1994.

Decided Jan. 30, 1995.

Patrick M. Wall, New York City, for defendant-appellant.

Bernard J. Malone, Jr., Albany, NY, Asst. U.S. Atty., N.D.N.Y. (Thomas J. Maroney, U.S. Atty., N.D.N.Y., of counsel), for appellee.

Before: FEINBERG, VAN GRAAFEILAND and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal by defendant Mario Salemi poses the single issue of what it means for a defendant to be "in the business of receiving and selling stolen property" under the Sentencing Guidelines. The case is before us for the second time. In the earlier appeal, after Salemi's original sentencing by the United States District Court for the Northern District of New York (Thomas A. McAvoy, Chief Judge), this court vacated the sentence, because of concerns over the adequacy of evidence in the record as to whether Salemi was in the business of receiving and selling stolen goods. We remanded the case to the district court for resentencing. That court then imposed the same sentence as before, after again concluding that Salemi was in the business of receiving and selling stolen property. That finding required a four-level enhancement, occasionally referred to hereafter as a "fencing enhancement," in Salemi's base offense level. U.S.S.G. § 2B1.2(b)(4)(A) (1992).[1] Salemi now appeals from his resentencing, claiming once more that the district court erred in determining that he was a "fence."

## I. Background

Salemi and six co-defendants were arrested in August 1992 in connection with the receipt and sale of more than 5,000 pounds of silver bars stolen from the Ames Goldsmith Corporation (Ames) in Glens Falls, New York. The seven defendants were ultimately charged with transporting stolen goods in interstate commerce and receiving stolen goods after the goods had crossed state boundaries, in violation of 18 U.S.C. §§ 2314 and 2315 respectively. They were also charged with conspiracy to commit these substantive crimes, in violation of 18 U.S.C. § 371.

The charged acts transpired during approximately nine months of 1991 and 1992. At that time, all the co-defendants other than Salemi lived in Glens Falls, New York. Several of the defendants, who worked at Ames, had devised a way of stealing silver ingots from the company and transferring them to co-defendants, who in turn cut the ingots in half and delivered them to defendant Mary Stuart. Mary Stuart sent the ingots to Salemi, her ex-husband, then residing in Hawaii. Salemi sold the ingots to a precious metals dealer in Hawaii. The dealer then sold the ingots to refineries in Rhode Island and Massachusetts. After the dealer complained about the weight of the ingots, Salemi agreed to ship them to the refineries himself.

Following a jury trial, Salemi was found guilty on each of the three charged counts. In April 1993, he was sentenced to serve three concurrent terms of 38 months in prison, to be followed by three years of supervised release. He was also sentenced to make restitution, jointly and severally with co-defendants, of $320,000 and to pay a $150 special assessment.

Salemi appealed his sentence on the ground that the court erroneously enhanced his base offense level by four levels, pursuant to U.S.S.G. § 2B1.2(b)(4)(A), for being a defendant "in the business of receiving and selling stolen property." At oral argument on Salemi's first appeal, the government conceded that "the trial evidence contained no proof either that Salemi had previously dealt in stolen goods or that any of the participants in the present crime believed he had dealt in stolen goods." Based on this concession, we held that "a principal factor cited by the district court" in imposing the fencing enhancement was "unsupportable," and therefore vacated the judgment of the district court and remanded for resentencing. Because the district court did not have a transcript of Salemi's trial at its disposal at the original sentencing, we ordered that such a transcript be produced for resentencing.

---

1. Section 2B1.2 of the Sentencing Guidelines was deleted by consolidation with § 2B1.1 effective November 1, 1993. The substance of what formerly was § 2B1.2(b)(4)(A) is currently set out at § 2B1.1(b)(5)(B). At all times relevant to the appeal in this case the applicable guideline was denominated § 2B1.2(b)(4)(A), and to avoid confusion we will refer hereafter to that section number exclusively.

Salemi was resentenced in April 1994. The court imposed the same sentence as before, finding once again that Salemi was engaged in the business of receiving and selling stolen property. This appeal followed.

## II. Discussion

■ As a preliminary matter, counsel for Salemi asserts that the discretion of the district court at resentencing and the discretion of this court on the present appeal are constrained by the law of the case doctrine. According to this argument, our prior order would allow reimposition of a fencing enhancement only if the district court found evidence in the record indicating "either that Salemi had previously dealt in stolen goods or that any of the participants in the present crime believed he had dealt in stolen goods." Salemi argues that because the transcript now makes clear that such evidence was not in the record, we are compelled to vacate his sentence again and remand for resentencing without the fencing enhancement.

We have reviewed the order issued in the first appeal and find nothing in it limiting the grounds on which the district court could make its determination as to whether to impose a fencing enhancement. The panel that decided the first appeal remanded the case because the most prominent detail in an otherwise sketchy recitation of reasons for a fencing enhancement lacked support in the record. However, the panel did not preclude grounding a fencing enhancement on other factors. Therefore, the district court was not limited by the law of the case, in the manner suggested by Salemi's counsel, when it resentenced Salemi.

■ On the merits, Salemi first urges this court to apply a "totality of the circumstances" test in reviewing the district court's determination that he was in the business of receiving and selling stolen property. At oral argument, the government urged a narrower inquiry that would ask simply: "(1) if stolen property was bought and sold, and (2) if the stolen property transactions encouraged others to commit property crimes." *United States v. Warshawsky*, 20 F.3d 204, 215 (6th Cir.1994).

The totality of the circumstances test was articulated by the First Circuit in *United States v. St. Cyr*, 977 F.2d 698, 703 (1st Cir.1992). That court held that "the sentencing judge must undertake a case-by-case approach ... with particular emphasis on the regularity and sophistication of a defendant's operation...." *Id.* Factors to be considered might include the amount of income derived from fencing, past fencing activity, demonstrated interest in continuing and expanding the fencing operation and value of the property received and sold.

In *Warshawsky*, the Sixth Circuit declined to adopt the totality of the circumstances test, finding it "unwieldy." 20 F.3d at 215. Instead, the *Warshawsky* court followed the approach identified above. See also *United States v. Esquivel*, 919 F.2d 957, 960–61 (5th Cir.1990); *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir.1990).

While this court has not relied explicitly on either formula, our recent decision in *United States v. Rosa*, 17 F.3d 1531, 1551–52 (2d Cir.), cert. denied, ── U.S. ──, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994), seems to follow the totality of the circumstances test implicitly. We believe that any differences between the two tests are subtle at best. However, we need not opt for one or the other test in this case because even under the supposedly more demanding totality of the circumstances test, the district court did not err in imposing a fencing enhancement on Salemi.

At resentencing, the district court first noted Salemi's past episodes of fencing. The court discussed Salemi's criminal history, including a 1980 New York conviction for fencing, a 1982 charge for criminal possession of stolen property (ultimately dropped in exchange for a plea of guilty to a burglary charge) and police reports from New York and Hawaii of Salemi's suspected fencing activity.

Salemi contends that any fencing activity in his past does not demonstrate that he was in the business of fencing at the time of his arrest. However, we believe that the district court could reasonably consider Salemi's past activities to support its finding under § 2B1.2(b)(4)(A). See *United States v. Con-*

*nor,* 950 F.2d 1267, 1275 (7th Cir.1991). Salemi's history of fencing would help explain his interest in the silver transactions and his ability to play an important role in those transactions. The district court could reasonably infer that Salemi's experience in receiving and selling stolen property provided him with expertise in packaging and shipping "hot" merchandise and tapping potential markets. Precisely because Salemi drew on that earlier acquired expertise to accomplish the charged activities, the court could conclude that Salemi was in the business of receiving and selling stolen property.

■ Furthermore, it was not error for the district court to cite police reports of suspicions that Salemi was involved in fencing. Salemi states that there was no support for the district court's finding that a Honolulu police report and investigation began in 1992. Even if that finding was erroneous, the error was harmless. Assuming that the correct date was "as early as 1989," as Salemi suggests, the activity would still be relevant. Although Salemi claims that reliance on "mere police suspicions" somehow deprived him of due process at sentencing, he points us to no case supporting that assertion. This court has consistently held that "a district court judge's discretion in sentencing is 'largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *United States v. Pugliese,* 805 F.2d 1117, 1122 (2d Cir.1986) (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). Not only have we held, as Salemi concedes, that a sentencing court may consider criminal activity for which a defendant has been charged but acquitted, *United States v. Sweig,* 454 F.2d 181, 184 (2d Cir. 1972), we have also upheld a sentencing court's reliance on similar though uncharged criminal activity. *United States v. Mennuti,* 679 F.2d 1032, 1037 (2d Cir.1982). But cf. *United States v. Chunza–Plazas,* 45 F.3d 51, 56–57 (2d Cir.1995). We hold, therefore, that the district court did not err in referring to Salemi's criminal history, including police reports of suspected fencing, in deciding whether to impose an enhancement under § 2B1.2(b)(4)(A).

The second factor the district court considered in examining the totality of the circumstances was the sophistication of the silver fencing operation with which Salemi was charged. The court found that over a "long period of time" Salemi had received over two and one-half tons of silver, valued at $320,-000, in "numerous shipments." The government's brief states, with no contradiction from appellant, that Salemi received "over twenty-five separate shipments." The court stated that the "sheer volume of stolen silver" supported the conclusion that "the operation was quite sophisticated." The court also noted Salemi's demonstrated expertise at processing the silver bars into lighter units, packaging them and sending them to refineries.

In addition, the refineries to which the silver was sent for smelting were located in Rhode Island and Massachusetts. This detail bolsters the finding that Salemi was in the business of receiving and selling stolen property. That conspirators would steal silver in New York and ship it all the way to Hawaii, only to have it shipped back to the mainland for smelting, suggests a level of expertise possessed by the Hawaii contact (Salemi) sufficiently high to justify the additional risk and other costs associated with reshipment. In sum, the sophistication of the charged acts supports the conclusion that if anyone deserves the title of "fence," it is Salemi.

■ Salemi contends that the district court could not properly rely on characteristics of the charged acts themselves in determining that he was in the business of receiving and selling stolen property. He asserts that this would result in double counting, since receipt and sale of stolen silver were already accounted for in the base offense level. An affirmative "in the business" determination, according to this argument, would require a finding that the scope of the defendant's fencing activity extended beyond the charged acts.

We reject Salemi's "double counting" argument. The simple acts of receiving and selling stolen property are distinct from the level of sophistication of those acts. The

base offense level does not reflect degree of sophistication at all. Thus, the defendant in *St. Cyr,* who received 22 stolen sweaters and returned them to the manufacturer for refunds, was given the same base offense level as Salemi under § 2B1.2(a). See 977 F.2d at 701. But, because the *St. Cyr* defendant's scheme was "primitive"—unlike the scheme here—the court on appeal reversed the sentencing court's imposition of a fencing enhancement. As this contrast shows, examination of the sophistication of the charged acts will not inevitably lead to a fencing enhancement every time a defendant is found to have received and sold stolen goods. We hold, therefore, that the court did not err in examining the sophistication of Salemi's role in the charged acts in deciding whether to impose a fencing enhancement. See *United States v. Richardson,* 14 F.3d 666, 675 (1st Cir.1994). Nor did the court abuse its discretion in concluding that the level of sophistication in this case, combined with Salemi's history of fencing, warranted an enhancement under § 2B1.2(b)(4)(A).

■ Salemi also makes a passing argument that the district court's finding as to sophistication is inconsistent with its implicit decision not to impose an enhancement for more than minimal planning under § 2B1.2(b)(4)(B). This argument lacks merit. Section 2B1.2(b)(4) permits the court to impose, under subsection A, a four-level fencing enhancement *or,* under subsection B, a two-level enhancement for "more than minimal planning," according to the specific characteristics of the offense. We see no reason why the judge could not simply apply the greater enhancement without making any finding at all with regard to the lesser.

Finally, Salemi argues that at resentencing the district court made two erroneous findings regarding his past fencing activity and his reputation among co-defendants. Notwithstanding the government's concession at the first appeal of lack of evidence in the record that co-defendants believed Salemi had previously dealt in stolen goods, the district court at resentencing purported to recall "statements of [co-defendant] John Graves who asked Mary Stuart to apply to Mario Salemi to purchase the silver specifi-

cally because of Salemi's wide-spread reputation as a fence for stolen property." The government conceded on the first appeal (and apparently does so again) that such statements were not in the record, although the record as a whole may well have supported an inference that Stuart was approached because of Salemi's reputation among co-defendants. The district court also stated at resentencing that "it was Mary Stuart's testimony that she often witnessed a woman selling Mr. Salemi large numbers of electronic components which she believed to be stolen from the catheter factory she worked in." On the record before us, this statement is not completely correct. Stuart did testify that when she and Salemi ran a jewelry store in New York she witnessed Salemi purchasing grey wires from a woman, that Salemi would squeeze the tips of the wires to extract pieces of platinum and that the wires resembled wires she later saw when she worked at a catheter factory. However, Stuart did not testify as to her belief that the wires were stolen or that these transactions had taken place often.

We do not believe, however, that the two errors require a second remand for resentencing. They do not outweigh or detract from the other evidence cited by the district court in justifying imposition of a fencing enhancement.

Judgment affirmed.