**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                              No. 95-5009

DAVID LEE MISENCIK,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-94-50095)

Submitted: December 29, 1995

Decided: January 30, 1996

Before WIDENER and WILKINS, Circuit Judges,
and CHAPMAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. William D. Wilmoth, United States Attorney, Robert H. McWilliams, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David Lee Misencik entered a guilty plea to one count of conspiracy to transport stolen property, 18 U.S.C.A.§ 371 (West Supp. 1995), and received the statutory maximum sentence of 60 months. The district court imposed a 57-month sentence for the conspiracy and a consecutive 3-month sentence under 18 U.S.C.A.§ 3147 (West Supp. 1995) because the district court found that Misencik committed part of the offense while he was released on bond. United States Sentencing Commission, Guidelines Manual § 2J1.7 (Nov. 1994). Misencik challenges this ruling on appeal. He also contends that the district court erred in finding that he was in the business of receiving and selling stolen property, USSG § 1B1.1(b)(5)(B), and that he was a manager or supervisor in the offense, USSG § 3B1.1(b). We affirm the sentence.

The indictment to which Misencik pled guilty charged that between November 1, 1992, and March 1994 he and co-defendant Robert Dorn employed "boosters," teams of shoplifters who ranged the eastern and southeastern states shoplifting merchandise. Misencik and Dorn bought the stolen merchandise from the boosters, many of whom were drug addicts, and resold it to fences in Ohio and Pennsylvania. From July 1993 until March 1994, Misencik and Dorn bought stolen merchandise from boosters and resold it to Jayantilal Shah, a fence in Cleveland, Ohio. Shah entered a guilty plea to a separate information and received a probationary sentence. Shah, as well as Herbert Levy and William Haines (both fences in Pittsburgh) all gave statements to Federal Bureau of Investigation agents. Co-conspirators identified in the presentence report in addition to Dorn included Shah, Levy, Haines, at least nine boosters, and two others who repackaged stolen goods.

In December 1993, Misencik was indicted in Pennsylvania for conspiracy to transport stolen property. He was apparently arrested in

2

West Virginia and released the same day on bond so that he could appear in federal court in Pennsylvania. However, Misencik did not appear in court in Pennsylvania until after his arrest in March 1994 in West Virginia for the instant offense. He was sentenced to a one-year term of imprisonment for the Pennsylvania conspiracy.

To determine whether an enhancement under USSG § 2B1.1(b)(5)(B) is warranted, the sentencing court should make a case-by-case examination of the totality of the circumstances, considering especially the regularity and sophistication of the defendant's operation. United States v. St. Cyr, 977 F.2d 698, 703 (1st Cir. 1992); see also United States v. Zuniga, 66 F.3d 225, 228 (9th Cir. 1995); United States v. King, 21 F.3d 1302, 1306 (3d Cir. 1994). The court's legal conclusion is reviewed de novo. St. Cyr , 977 F.2d at 701.

Although Misencik stipulated in his plea agreement that the value of the stolen property attributable to the instant conspiracy was between $500,000 and $800,000, he argued that he was not in the business of receiving and selling stolen goods. At his sentencing hearing, he attempted to establish that he devoted most of his time to a legitimate business, a video store he operated in West Virginia, and that his criminal activities were simply a "hobby." Misencik's daughter, Michelle, the only employee at the store before his arrest, and his girlfriend, Lynda Cox, who worked there after his arrest, testified that he put in regular hours working at the video store before his arrest. Called by the government as a witness, Misencik testified that he did not keep records of his income from the video store and thus did not know whether he made more from legitimate or illegal activities. He agreed that he supervised more people in his criminal activities than he did at the video store. Citing St. Cyr, 977 F.2d at 702-04,* the district court found that Misencik was in the business of buying and selling stolen property because the operation demonstrated both regularity and sophistication.

_____

*In St. Cyr, the guideline at issue was USSG§ 2B1.2(b)(4)(A) (Nov. 1992). Under the 1993 amendments, section 2B1.2 was deleted and the "in the business" provision was incorporated into § 2B1.1(b)(5)(B). USSG App. C, amd. 481.

3

The district court found that Misencik's operation demonstrated sophistication and regularity in that a large number of people were involved in an enterprise which continued for a long time and took in a great deal of money. Misencik argues that the court erred because the business practices used were primitive and the government could not establish how much of Misencik's income came from criminal activity and how much from his legitimate business.

We find that the court's determination was correct. Misencik and Dorn coordinated the efforts of about a dozen boosters and acted as middlemen between the boosters and the fences. When necessary, Misencik bailed the boosters out of jail. The merchandise acquired from the boosters was sold to new fences as old ones were arrested, and Misencik and Dorn kept the business going for several years. According to Misencik's stipulation, they handled over a half-million dollars worth of goods. This evidence amply supports the court's finding that Misencik was engaged in the business of selling stolen goods.

In addition to the boosters whose services Misencik and Dorn used, several individuals were employed to remove retail stickers from stolen merchandise. This evidence alone supports the district court's factual finding that Misencik was a manager or supervisor in the offense.

Misencik argued at sentencing that he should not be penalized for committing a part of the offense while on release because the order entered December 15, 1993, did not give him notice that he had to withdraw affirmatively from the ongoing conspiracy with Dorn to avoid being held responsible for the criminal actions of others in the conspiracy. He relies on United States v. Cooper , 827 F.2d 991, 994-95 (4th Cir. 1987). Cooper holds that a defendant who is not advised that conviction of another crime committed while he is on release will result in an enhanced penalty may not be subjected to the enhanced penalty. The order releasing Misencik advised him of the likelihood of enhanced penalties if he violated the conditions of bond.

Implicit in Misencik's argument is the assumption that he took no active part in the Dorn conspiracy after his release in December 1993. However, in a statement given to the FBI, Jay Shah stated that while

4

he was out of the country in early 1994 his son purchased stolen goods from Misencik and Dorn; after his return, on March 9 and 10, 1994, Shah personally bought stolen goods from Misencik and Dorn. Given this information, the district court did not clearly err in finding that Misencik continued to participate actively in the conspiracy, and did not err in finding that he was adequately advised that to do so would subject him to heightened penalties.

We therefore affirm the sentence imposed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5