**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 95-40184**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**TIMOTHY LEE SUTTON,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Eastern District of Texas

( February 16, 1996 )

Before DeMOSS and DENNIS, Circuit Judges, and DUPLANTIER,[1] District Judge.

DeMOSS, Circuit Judge:

Defendant Timothy Lee Sutton appeals the application of the sentencing guidelines to his conviction for conspiracy to sell stolen vehicles. Sutton appeals (1) the district court's enhancement of his base offense level because he was "in the business of receiving and selling stolen property" and (2) the method the district court used in calculating the amount of the loss.

---

[1] District Judge of the Eastern District of Louisiana, sitting by designation.

**BACKGROUND**

Sutton ran Elite Car Sales, a used car dealership, out of his mother's home, where he lived. From September 1993 until February 1994, Sutton and two other individuals[2] engaged in a conspiracy to transport and sell stolen vehicles. Sutton sold at least ten stolen cars and trucks.

Sutton acted as the middleman in the conspiracy, taking orders for particular vehicles, contacting people to steal them, and then delivering the stolen vehicles to the buyers. During the five months of the conspiracy, Sutton made $10,800 from his illegal activities, while he earned only $330 per month from his legitimate car business.

Sutton was charged in a one count information with Conspiracy to Transport and Sell Stolen Vehicles in Interstate Commerce (18 U.S.C. § 2312) and Conspiracy to Sell or Receive Stolen Vehicles (18 U.S.C. § 2313). Sutton entered into a plea agreement with the government in which he agreed to plead guilty to the charge and assist the FBI in its investigation.

The Presentence Report ("PSR") recommended, and the government sought and received, a four point increase in Sutton's base offense level under U.S.S.G. § 2B1.1(b)(5)(B), because Sutton was "in the business of receiving and selling stolen property." Because the loss was between $120,000 and $200,000,[3] his base offense level of four was increased nine points. The government filed a motion for downward departure under U.S.S.G. § 5K1.1, which was granted, reducing Sutton's total offense level from 17 to 13. His criminal history category was I, so the guideline range after the downward departure was 12 to 18 months. Sutton was sentenced to 12 months imprisonment, three years supervised release and restitution of $46,560.65. Sutton filed a timely notice of appeal.

## STANDARDS OF REVIEW

---

[2] The other two men, Michael Lee Paffett and Scott Anthony Carreon, entered guilty pleas in related cases.

[3] Calculated as $153,343.61 the amount of money paid to vehicle owners by their insurance companies.

We review the district court's factual findings for clear error. ***United States v. Washington***, 44 F.3d 1271, 1280 (5th Cir.), *cert. denied*, 115 S. Ct. 2011 (1995). "The district court may base the findings underlying its sentence on facts in the record that have been proven by a preponderance of the evidence." ***United States v. Mackay***, 33 F.3d 489, 496 (5th Cir. 1994). The district court's application of the guidelines to the findings is reviewed *de novo*. ***United States v. Gaitan***, 954 F.2d 1005, 1008 (5th Cir. 1992).

## DISCUSSION

### The "In the Business" Enhancement

Sutton argues that the district court erred in finding that he was "in the business of receiving and selling stolen property," thus raising his base offense level pursuant to U.S.S.G. § 2B1.1(b)(5)(B).[4] Sutton contends that this section is intended to enhance the punishment of "professional fences whose lifetime vocation involves the receipt and sale of stolen property," rather than individuals who sold only the property for which they have been convicted. Sutton asserts that this is the only reasonable construction of the statute, because the criminal is already being punished for goods fenced in the instant offense. Therefore, the enhancement is to punish those who *make their living* from selling stolen goods.

Sutton urges this court to adopt the approach used by the First Circuit in deciding whether the "in the business" enhancement is appropriate. In ***United States v. St. Cyr***, 977 F.2d 698 (1st Cir. 1992), the court expressed the same concern as Sutton, saying:

> [I]t would be senseless to presume that the enhancement identifies exactly the same conduct as the base offense itself. If the Sentencing Commission wished to ensure stiffer sentences for all those who receive and sell stolen property, it could have simply raised the base offense level. There must, then, be a limiting principle beyond simple facilitation or under-representation of criminal activity -- some smaller subclass to which the enhancement refers. We think that this is what the Sentencing Commission intended.

*St. Cyr*, 977 F.2d at 702.

---

[4] "If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels." U.S.S.G. § 2B1.1(b)(5)(B).

We must reject Sutton's argument. While his view may be the law in the First Circuit, it is not the law in the Fifth. We have repeatedly stated that a person can receive the "in the business" enhancement when the only goods he has fenced are those for which he is convicted. *E.g.*, *United States v. Esquivel*, 919 F.2d 957 (5th Cir. 1990); *Mackay*, 33 F.3d 489 (5th Cir. 1994).[5]

In *Esquivel*, the defendant was convicted of receiving and selling 350 cases of stolen athletic shoes. The district court enhanced his base offense level four points because he was in the business of receiving and selling stolen property. Esquivel argued that the enhancement should only apply in cases where the defendant has fenced goods other than the ones for which he is convicted. He argued that "the guideline was not intended to treat an established fence the same as a 'green' fence such as

---

[5] As recognized in a recent Ninth Circuit case, there is a circuit split on this issue:

> Two approaches for determining whether this enhancement applies have developed among the circuits, and they turn on a determination of whether the defendant was "in the business." The first test is the so called "fence" test, adopted by the Fifth, Sixth and Seventh Circuits, and urged here by Zuniga. *United States v. Warshawsky*, 20 F.3d 204, 214 (6th Cir. 1994); *United States v. Esquivel*, 919 F.2d 957, 959 (5th Cir. 1990); *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir. 1990) (enhancement does not apply to a defendant who sells property that he himself has stolen). Under the "fence" test, the government must show that defendant was a person who buys and sells stolen property and, thereby, encourages others to commit property crimes.

> The second test is the so called "totality of the circumstances" test, adopted by the First and Third Circuit.... *See United States v. King*, 21 F.3d 1302, 1306 (3d Cir. 1994); *United States v. St. Cyr*, 977 F.2d 698, 703 (1st Cir. 1992). *See also United States v. Rosa*, 17 F.3d 1531, 1551-52 (2d Cir.) (implicitly following the totality of the circumstances test), *cert. denied*, 115 S. Ct. 211 (1994). Under the "totality of the circumstances" test, the sentencing judge undertakes a case by case approach with emphasis on the "regularity and sophistication of a defendant's operation." *St. Cyr*, 977 F.2d at 703.

*United States v. Zuniga*, 66 F.3d 225, 228 (9th Cir. 1995).

himself." *Id*. at 960. This court rejected that interpretation, relying on the background to the commentary, which read:

> The treatment accorded receiving stolen property parallels that given theft. Persons who receive stolen property for resale receive a sentence enhancement because the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes.

*Id*.

In *Mackay*, 33 F.3d 489, we found that the enhancement was appropriate for a defendant convicted of selling one stolen backhoe. The court found that even though the defendant was not a lifetime fence, he deserved the enhancement. The fact that the defendant "transported the backhoe to Dallas to sell it, advertised the sale, and arranged for the goods to be shown to interested buyers ... support[ed] a finding the [the defendant] was 'in the business of' fencing stolen property." *Id*. at 497.

The approach taken in *Esquivel* and *Mackay* does not require the defendant to have previously fenced goods other than those for which he has been convicted. A criminal can be "in the business" of fencing even though this is his first time to fence. This is because our approach views the enhancement as a punishment for fences, people who buy and sell stolen goods, thereby encouraging others to steal, as opposed to thieves who merely sell the goods which they have stolen. "A thief need not know the length of his fence's resume to be encouraged to commit other crimes by the successful resale of property he has stolen." *Esquivel*, 919 F.2d at 960.

Therefore, the district court did not err in finding that Sutton was in the business of selling stolen cars. Over five months, Sutton took orders for particular cars, had them stolen and then sold them. Clearly, he was "in the business" of receiving and selling stolen property.

**Amount of Loss**

Sutton argues that the district court erred by using the wrong method to calculate the loss caused by his crime under U.S.S.G. § 2B1.1(b)(1). The district court calculated the loss according

6

to the amount the insurance companies paid out to the owners, $153,343.61. Because the loss was between $120,000 and $200,000, Sutton's base offense level was increased nine levels.

The application notes to U.S.S.G. § 2B1.1 define loss as "the value of the property taken, damaged, or destroyed. . . . (2) In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle even if the vehicle is recovered immediately." § 281.1 comment. (n.2). The notes go on to say that the "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." § 281.1 comment. (n.3). "As long as a factual finding [regarding the amount of loss] is plausible in light of the record as a whole, it is not clearly erroneous." *United States v. Wimbish*, 980 F.2d 312, 313 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 2365 (1993).

Sutton contends that the fair market value, rather than retail price, should be used to determine loss. Sutton argues that the proper measure of the loss is the fair market value of the vehicles as determined by the National Association of Automobile Dealers ("NADA") guide.

At the district court, Sutton objected to the use of NADA values, arguing that they are inflated. Yet, on appeal, he argues that NADA values should be used. The NADA values used in the PSR resulted in a loss of $140,165, which in within the same guideline range as the $153,343.61 found by the district court. Sutton has not explained how use of NADA values will result in a different result than the method used by the district court.

Mindful of the great deference we show district courts in their determinations of loss, we find no error in the district court's determination.

## CONCLUSION

The district court did not err in its application of the sentencing guidelines. For the foregoing reasons, the judgment of the district court is AFFIRMED.